PHILIP A. LEWIS
Attorney at Law
Suite 500
210 SW Morrison Street
Portland, OR 97204
(503) 226-3498
E-mail: phil@phillewis.com

    Attorney for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE No. 3:14-cr-00224-JO |
| | ) | |
| Plaintiff, | ) | REPLY TO GOVERNMENT'S |
| | ) | RESPONSE TO MOTION TO SUPPRESS |
| v. | ) | AND MOTION FOR *FRANKS* HEARING |
| | ) | |
| | ) | |
| MARK PATRICK JOHNSON, | ) | |
| | ) | |
| Defendant | ) | |

I.  GOVERNMENT'S FACT STATEMENT

    For the most part, the government's statement of facts is simply a reiteration of the police reports and search warrant affidavit.  Even though the issue before the court is probable cause the government includes such facts as Mr. Johnson's exercise of his rights under the Fifth and Sixth Amendment to the U.S. Constitution at the time of his arrest, apparently inviting this court to draw negative probable cause related inferences from that exercise which it may not do.  *United States v. Giordano*, 416 U.S. 505, 556 FN. 5, 94 S. Ct. 1820 (1974), *citing United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970).

1 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

Although there is agreement as to many of the facts, Mr. Johnson takes issue with some of the government's assertions, among them being the following:

1.  That he was and is known to law enforcement as a member the European Kindred (EK), as evidenced by the shield tattoo on defendant's calf.  Response, pp. 1-2.

As is well known to the government, in 2012 Mr. Johnson's parole officer reported that EK had blacklisted Mr. Johnson and that he had "covered his shield."  ORS 161.015 includes, in the definition of "peace officer," "such other persons as may be designated by law."  ORS 137.620(2) provides that "[p]arole and probation officers of the Department of Corrections or a county community corrections agency and those appointed by the court have the powers of peace officers in the execution of their duties, . ."

It is not a tenable government argument that parole officers are not part of law enforcement, and thus it is literally not true that Mr. Johnson "was and is known to law enforcement as a member of the European Kindred (EK)," and it is misleading to imply that his membership in the gang is active and to rely on his tattoo, which the government knows has been covered, in support of that implication.

Further, it is disingenuous to suggest that the only source of defendant's separation from EK is Mr. Johnson himself in order to avoid further attention from law enforcement and/or to avoid a violation of one's probation or parole.  Indeed, the government goes so far as to speculate and generalize by saying

2 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
     MOTION FOR FRANKS HEARING

what gang members routinely do, and ignores the fact that the parole officer himself noted that the EK tattoo had been covered up. Response, pp. 24-25.

2.  The knife in his possession was prohibited by ORS 166.270.

This has been addressed in defendant's motions.  The knife does not have a blade which swings into position by force of a spring, and the defense will present evidence at the hearing to that effect.

3.  Drug dog omission

While the government's statement of facts acknowledges the deployment of a drug dog, and insists that the dog was only deployed outside the vehicle, it does not deny that the deployment of the dog and its consequent failure to alert were omitted from the search warrant affidavit.

4.  The Inventory Search - Response, p. 3.

The police stopped defendant's vehicle by prearrangement, boxing it in so that it could not move, in a place where it was a traffic hazard, which the government claims was an excuse for impoundment which required, in turn, an *inventory* search.  The government's rendition of facts omits the fact that it was the police who chose how, when and where the vehicle would be stopped, and that this was more than merely an arrest on outstanding parole violation warrant.

////

3 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

5.  "The inventory search also located a 'fairly new' looking glass pipe used for smoking methamphetamine in a seat pocket of the right front seat, . . ."  Response, p. 4.

On page 3 of his search warrant affidavit, Officer Corona said: "Officer Ables located a glass pipe commonly used for smoking methamphetamine in the seat pocket of the right front seat.  I could see that although the pipe was fairly new, *it was coated with scorch marks and white residue*."  (Emphasis added).

The government's facts omitted the scorch marks and the white residue, but its later assertion of probable cause relies on them in part.  Moreover, the government said nothing in response to the defense assertion that when it was examined by counsel neither residue nor scorch marks were observed.  This issue will be resolved by the court after observing the pipe.

The balance of the government's fact statement is a repetition of what went before and an outline of the warrant affidavit that agrees in most particulars with what the defense has stated.

However, footnote 3 on page 6 of the Response begs for comment.  The government appears to misunderstand defendant's point.  It is not Officer Corona's use of the word "commonly" that is at issue.  Instead, it is his rendition of Officer Stenzel's report that is materially inaccurate.

Officer Corona said: "I know from reading police reports that JOHNSON commonly carries drugs, cash, and weapons in a safe or lockbox in his vehicle (Portland Police Bureau Case #09-106295)."

4 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

Affidavit, p. 2, first full paragraph.  That was in a sworn affidavit for a warrant to search luggage in the trunk of a vehicle, one of which had an object in it that could be a lockbox.

Officer Stenzel's report does not say that at all - it says that he had heard from one or more unqualified informants that Mr. Johnson "often keeps his gun and drugs in a safe."  Custody Report, PPB Case No. 09-106295 p. 2.  Officer Corona added some important facts to that - he put money in the suspected lock box and put the lockbox in the trunk of the car.  That hardly seems to have been a coincidence.

The government was specifically asked about Officer Corona's reliance on "reports" on more than one occasion during the discovery phase, and the government assured the defense that Officer Corona was only relying on a single report.  Now the story appears to have changed.  Now he was relying on two reports, referred to by the government as related to PPB Case No. 09-32495. If what the government means is that Officer Corona was only referring to Officer Stenzel's reference to PPB Case No. 09-32495, and not an actual report, there is a problem with that as well. Officer Stenzel's report in PPB Case No. 09-106295, which the court has seen and which will be offered as an exhibit at the hearing, makes no reference to drugs, weapons or a safe in the other case.

Officer Corona materially misrepresented the information that was in Officer Stenzel's report to make certain he had the requisite probable cause to obtain a search warrant.  Regardless of

5 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

whether the misrepresentation was negligent or deliberate, it was a misrepresentation, it was material and nothing can change that.

### III.   ANALYSIS

The government begins its analysis with familiar statements of general search and seizure law and then the list of facts upon which the government relies for probable cause to search the bags in the vehicle appears at Response, p. 12:

1.  Officers arrested defendant, an EK member[1] with a violent criminal history, on an outstanding PPSV warrant.

2.  During a search of his person incident to arrest, officers recovered $7,100 from defendant's pocket and a spring-assisted Kershaw knife.

3.  Defendant provided implausible explanations for why he was operating this vehicle, and what he was doing with so much cash.[2]

4.  Defendant's driver's license was expired and there was no proof of valid insurance.

5.  Due to the traffic hazard posed by the vehicle,[3] officers impounded it and ordered a vehicle tow.

6.  The officers conducted an inventory search of the vehicle consistent with their policy.[4]

////

---

[1]This is misleading, as already argued elsewhere.

[2]There is nothing about any of this in the affidavit at all, just as there is nothing "implausible" about inheriting money (Mr. Johnson's explanation about the source of the cash, recounted only in Officer Corona's police report).

[3] A hazard created by the officers themselves

[4]What they really did was seize the luggage from the trunk without a warrant and without legitimate probable cause.

6 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

7.    During that inventory, they observed another restricted weapon (combination stun-gun/flashlight) and a meth pipe with residue on it.[5]

8.    In the trunk, officers found two bags, one of which was quite heavy and a boxy item in the bottom made a metallic clink sound when officers set it on the ground.

None of that says one word, either expressly, impliedly or inferentially, about the contents of the "two bags." There is no fact in the above list from which a magistrate could conclude or infer that there was contraband, fruits of crime, instrumentalities of crime or evidence of crime in either of those bags. See Fed. Rules of Crim. Proc. Rule 41(c).

There is a huge hole in the government's probable cause analysis caused by the revelation that neither it in argument, nor the officers in investigation, could rely on the information gained by means of the illegal search in 2009 - only what Officer Stenzel found in Mr. Johnson's vehicle in 2009 could conceivably connect the contents of the trunk of Mr. Johnson's vehicle in 2014 to criminal conduct.

In his affidavit, Officer Corona says:

The Dakine backpack in particular was quite heavy and it appeared to have something large and boxy in the bottom of the pack. When I set the backpack on the ground I heard a metallic clink as it hit the pavement. I know from previous police reports that JOHNSON commonly keeps valuables such as cash weapons and drugs in a safe or lock box concealed in his vehicle.

////

---

[5]See defense comments above.

It is impossible to say that the fruits of the illegal 2009 search had no effect on Officer Corona's search of Mr. Johnson's vehicle, his examination of the bags found in the trunk and his seeking a warrant to search them. Without the information from 2009, the fact that the backpack had something large, square and metal inside is in no way suggestive that its contents are the proper subject of search and/or seizure.

### A. Inventory Search

Inventory searches must be conducted according to standard agency procedures. *See*, *South Dakota v. Opperman*, 428 U.S. 364, 372-75 (1976); *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6 (1987). Any "discretion [must be] exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. That is clearly not what happened here - instead, the bags in question were seized for the specific purpose of investigating them for criminal activity.

The inventory search is an exception to the warrant requirement, and as such the government has the burden of proving it. *United States v. Jeffers*, 342 U.S. 48, 51 (1951). The Fourth Amendment allows the opening of closed containers only where the local inventory policy permits it. See *Florida v. Wells*, 495 U.S. 1, 4 (1990).

////

////

8 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
      MOTION FOR FRANKS HEARING

The government argues Portland's inventory policy, and assuming that it is applicable for purposes of the argument, it provides in pertinent part:

> Unless otherwise provided in this Chapter,[6] closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes. PCC 14C.10.030(C)(3).

In determining whether Officer Corona's actions were consistent with the local inventory ordinance, this court should defer to the state courts' interpretations of that ordinance. *Descamps v. United* States, ––– U.S. ––––, 133 S. Ct. 2276, 2291 (2013); *Hicks v. Feiock*, 485 U.S. 624, 630 (1988); *Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1084 (9th Cir.2010).

The scope of the inventory must be "reasonable in relation to its purpose."[7] *Weber v. Oakridge School Dist. 76*, 184 Or. App. 415, 437 (2002), *rev. den.*, 335 Or. 422 (2003). Generally, "property is to be listed by its outward appearance; no closed, opaque container may be opened to determine what, if anything, is inside it so that the contents may be inventoried in turn." *State v. Ridderbush*, 71 Or. App. 418, 426 (1985).

////

---

[6]The exception has to do with containers that are designed or likely to hold valuables. State v. Williams, 227 Or. App. 453, 457 (2009).

[7]1. Promptly identify property to establish accountability and avoid spurious claims to property; 2. Assist in the prevention of theft of property; 3. Locate toxic, flammable or explosive substances; or 4. Reduce the danger to persons and property. PCC 14C.10.030(B).

9 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
      MOTION FOR FRANKS HEARING

What Officer Corona did here - seize the bag, feel it for weight in an attempt to identify its contents and then put it down on the street, carefully noting its contents (probably for comparison to 2009) and then using that information to obtain a search warrant - is no different in function than opening the bag, noting drugs on the inside and then applying for a warrant. He was, after all, looking for a safe.

The applicable inventory policy appears to say nothing about the inventory officer seizing the inventoried property - the code is silent on that and it therefore does not permit such a seizure. *State v. Dimmick,* 248 Or. App. 167, 175 (2012).

B.  Probable Cause

The government's argument on probable cause, beginning at Response p. 14, is simply a restatement of its previous arguments, but it relies more heavily on the claim of residue in the glass pipe found near the passenger seat in the vehicle Mr. Johnson was driving.[8]  The balance of the government's argument is directed toward re-emphasizing the government's view that Mr. Johnson was subject to being searched because of his background and the fact

---

[8]The government's citation of *United States v. Griffin*, 168 Fed. Appx. 765 (9th Cir. 2006) at Response, p. 14, violates Ninth Circuit Rule 36-3 and should be stricken or disregarded. Moreover, in *Griffin* the court relied heavily on the officer's stated experience was that persons in possession of drug paraphernalia also possess drugs and customarily keep them in their vehicles, which was not the affiant's stated experience in this case.  *See* affidavit, page 5, first full paragraph.

10 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND MOTION FOR FRANKS HEARING

that he was the subject of an outstanding parole violation warrant and he had more cash than the government thinks he should have had.

  C. The 2009 Incident - Response, p. 16

    First, the government misunderstands the defense argument respecting the 2009 search; Mr. Johnson does not seek suppression of the evidence from the 2009 search - he seeks suppression of evidence obtained by the government through the use of the 2009 evidence, which was unlawfully seized.  Thus, the defense refers to it as fruit of the poisonous tree, a phrase immortalized 51 years ago by the Supreme Court in *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed.2d 441 (1963); *See also, United States v. Crews*, 445 U.S. 463, 470, 100 S. Ct. 1244, 63 L. Ed.2d 537 (1980) ("[T]he exclusionary sanction applies to any 'fruits' of a constitutional violation....").

    Second, the argument that there must be a prior judicial finding of illegality as some kind of notice to Officer Corona is pure invention without a shred of authority to support it.  A rule imposing such a requirement would allow, among other things, the use of coerced confessions as a basis for a search warrant if the affiant was not aware of the coercion.  The Poison Tree Doctrine is a prophylactic rule, and the exception suggested by the government here would literally swallow it and render it a dead letter.

    Finally, the government wants to have its cake and eat it too.  It represents to the court that it is not relying on any of the 2009 evidence for probable cause, but at Response, p. 17, at

11 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
  MOTION FOR FRANKS HEARING

the top of the page, that is exactly what it does.  Before any evidence is taken, this court should determine, definitively, whether the government relies on the 2009 search or not.

The government has not explained its decision to forgo reliance on 2009, if indeed it has made such a decision, but it cannot be an exercise in kindness.  The decision may be based on the government's recognition that nothing from Officer Stenzel's November 27, 2009, encounter with Mr. Johnson may be used against him by in any way because of *Arizona v. Gant*, 556 U.S. 332 (2009). Or, it may be the government's silent acknowledgment that Officer Corona's affidavit would not survive judicial scrutiny of his lily gilding about the 2009 "reports" and what they revealed.  However, if that is the reason for the decision, the government's reasonableness and good faith arguments must fail.

D.  Deference and the Preference for Warrants

Great deference to the opinion of the issuing magistrate is the way the preference for search warrants is effectuated. *United States v. Leon*, 468 U.S. 897, 914 (1984).  The deference is not unlimited, however, and it did not preclude inquiry into (1) "the knowing or reckless falsity of the affidavit [supporting the warrant]," (2) whether the magistrate "merely served as a rubber stamp for the police," and (3) whether the affidavit provided the magistrate "with a substantial basis for determining the existence of probable cause." Id. at 914–15.

////

12 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
     MOTION FOR FRANKS HEARING

But this general rule of deference to a magistrate's finding of probable cause should not apply where, as here, the magistrate's very finding was distorted by deliberate or reckless misstatements contained in the warrant application. See 2 W. LaFave, Search and Seizure § 4.4(c), at 199 (2d ed.1987). "[W]hen it has been established that the [magistrate's] earlier finding of probable cause was based upon a broader set of 'facts,' some of which are now shown to be false, there is no longer any reason to give deference to that earlier finding, . . ."

A court revisiting the probable cause analysis with the improper allegations removed should resolve "doubtful or marginal" cases in the defendant's favor, as a contrary rule would stand the warrant requirement on its head and encourage the use of false and misleading statements in search warrant affidavits. *Franks v. Delaware*, 438 U.S. 154, 168, (1978). *See also, Burke v. Town of Walpole*, 405 F.3d 66, 82 (1st Cir.2005) (reasoning that where "reckless misstatements or omissions" were included in a warrant affidavit "a court owes no deference to a magistrate's decision to issue an arrest warrant") cited with approval in *United States v. Gifford,* 727 F.3d 92, 99 (1st Cir. 2013).

In this case, the affiant completely omitted the drug dog's failure to alert to the trunk area of the vehicle; he misrepresented what Officer Stenzel said by reporting that Officer Stenzel had heard from informants with specifics tailored to this case; he misrepresented or recklessly misstated Mr. Johnson's then

13 – REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND MOTION FOR FRANKS HEARING

present gang status; he emphasized gang violence and lawlessness knowing this case was not gang-related; he misrepresented or recklessly misstated the condition of the glass pipe found on the passenger side of the vehicle driven by Mr. Johnson; he blamed the traffic hazard that he and Dep. Burkeen created on Mr. Johnson; and he restated his earlier misrepresentation about Mr. Johnson "commonly" keeping his money, drugs and weapon in a safe in his car. His most significant misrepresentations - those which are case specific - are apparent from a comparison of Officer Stenzel's report to the affidavit.

The government has as much as admitted some of this, or implicitly admitted the *Gant* violation (meaning that nothing from 2009 should have appeared in the affidavit), by forswearing reliance on any 2009 evidence for probable cause in 2014. Yet it is apparent on the face of it that Officer Corona directed his entire investigation - the seizure of the bags, the misrepresentations about what Mr. Johnson "commonly" does, the emphasis in his affidavit - on what happened in 2009.

To defer to the magistrate's probable cause determination in such a case would be a travesty and would encourage further travesties, each one worse than the last.

### E. Good Faith

A substantial showing of deliberate falsehood or of reckless disregard for the truth precludes the application of the good faith exception under *Franks v. Delaware*, supra. See *United*

14 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

*States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir.2002).   The "good faith exception" applies, and suppression is unwarranted, unless the officers acted in bad faith by misleading the magistrate judge.   *United States v. Leon*, supra, 468 U.S. at 923.   The basis for a finding of bad faith has been set out above and in defendant's suppression motion and Franks motion.

F.   Requirements for a *Franks* Hearing

All of the specificity and detail requirements for a *Franks* hearing have been fulfilled.   Defendant's Franks motion specifically identifies which portions of the affidavit are claimed to be false; (2) it contends that the false statements or omissions were deliberately or recklessly made;[9] (3) the motion containing the allegations is supported by a detailed offer of proof, including affidavits[10] and police reports, and (4) challenged the veracity of only the affiant.

Finally, it is apparent that (5) the challenged statements are necessary to a finding of probable cause.   Without the 2009 information, all the government can claim for probable cause is traffic tickets and weapons offenses committed, if at all, in the front seat, and the affiant was not looking in the trunk for evidence related to traffic offenses.   If no weapons or other

[9]They were specific to this case and provided a vital and in fact the sole link between criminality and the closed containers sought to be searched.

[10]The search warrant affidavit and Mr. Lewis's Supplementary Affidavit.

15 – REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND MOTION FOR FRANKS HEARING

contraband were apparent in the trunk, an "inventory search" was strictly limited to taking note of the closed containers. Absent the 2009 information, there were no grounds to seize the containers - nothing to which the government can point to connect them, directly or indirectly, to any specific criminal conduct - not to speak of grounds to search them.

That is the reason the government continues to waffle on whether it relies on 2009 for probable cause in any particular. The government is between a rock and a hard place: Without 2009, there is no hint of a reason to search the luggage. However, the information from 2009 is costly - it requires answering for both Officer Stenzel's clearly illegal vehicle search and Officer Corona's imaginative affidavit preparation, and it is almost certain that the results of the 2009 search are unavailable to the government as a matter of law in any event.

It might be a high a price to pay, but sanitized as they must be, the facts upon which the government may legally rely simply would not lead any reasonable magistrate to conclude that any of the items at which the warrant was directed would likely be in the luggage. Those items were:

> [E]vidence of  the crimes of Unlawful Possession of Illicit Controlled Substances (ORS 475.752(3)), and Felon in Possession of Restricted Weapon (ORS 166.270) have been committed, and illicit controlled substances, identification, and fruits or instruments of the crimes will be found in blue/grey/yellow duffel bag, black/green Oakine backpack, white Samsung Galaxy cell phone, and red HTC cell phone located in the Portland Police Bureau property  warehouse. Affidavit, p. 5.

16 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
    MOTION FOR FRANKS HEARING

The idea that anything drug or weapons related was in those bags was completely unsupported by those facts legitimately included in the affidavit.

Regardless of how reprehensible a person the government believes Mr. Johnson to have been or to be, it cannot seize or search his luggage without probable cause.

For the above reasons, and for those stated in defendant's motion to suppress and motion for Franks hearing, the court should grant both motions and order the evidence in question suppressed.[11]

Respectfully submitted this 3rd day of December, 2014.

/s/ Philip A. Lewis
PHILIP A. LEWIS, OSB #78284
Attorney for Defendant

---

[11]Defendant's motions were filed on October 30, 2014.  The government did not file its response until December 1, 2014, three days before the hearing date.  The defense has endeavored to address as much of the response as it could under these time constraints.  At the conclusion of the hearing, the defense might need to seek leave to file additional arguments.

17 - REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND
      MOTION FOR FRANKS HEARING